Tilghman C. J.
This road was laid out by commissioners under a special act of assembly, and the Court of Quarter *488 Sessions of Lebanon county ordered it to be opened, and directed the width of it. Two objections are made to the proceedings. 1. That when the court made the order, they, had no record of the return of the commissioners before t^em- 2. That they had not power to direct the width of the road.
1. The act under which this road was laid out (18th February, 1813,) orders the commissioners to deposit a copy of the draught of the road in the office of the clerk of the Court of Quarter Sessions, in each county through which it shall pass. On the 16th February, 1813, that part of Dauphin county through which the road passes, was thrown into a new county which was then created, by the name of Lebanon county. But inasmuch as the Courts of Quarter Sessions and Common Pleas in Lebanon county were not to be opened and held until the 1st Monday in December, 1813, and no process was to bear'teste sooner than the 1st day of November, 1813, it does not appear that there was any office in that county, in which the draught of the road could be deposited in June, 1813. Accordingly the commissioners in June, 1813, deposited their draughts in the county of Dauphin, and I am of opinion, that in so doing, they complied with the spirit of the law. The draught thus deposited became a record by the express words of the law, and a copy certified by the clerk of the Court of Quarter Sessions was good evidence at all times, and in all places, nor had the court of Lebanon county any authority to remove the record from Dauphin county. Consequently they had a right to act on the certified copy which was before them when they made the order for opening the road.
2. When commissioners are authorised to lay out and mark a road, there might be strong ground for saying that they may regulate the width of it; for there can be no road without width: But there has been an established construction to the contrary. These expressions have been used in a great many laws, and it has been understood that the commissioners could only designate the course of the road. The act of 18th February, 1813, sect. 4, declares, that from the time of the draught being recorded in the office of the clerk of the Court of Quarter Sessions, “ the road shall be to all .intents and “ purposes a public highway, and shall be opened and kept in repairs in the same manner as .other -roads daid out by the au- *489 £< thority of the courts in the counties aforesaid.” It is to be inquired then, in what manner other roads are opened in these counties ; and this will appear by the 1st section of the general road law, passed the 6th April, 1802. The road laid out by the viewers, is to be returned to the Court of Quarter Sessions, and when approved by the court and entered on record, “ it is to be thenceforth taken to be a public road or “ highway, and the court shall direct of what breadth the ££ road shall be opened, which shall not in any case exceed “ SO feet.” It would seem from this, that the power of directing the width of the road, is appurtenant to the power of ordering it to be opened. The expressions in the act for laying ,oút this road, should not be scanned too critically. The object of candid construction is to effectuate the meaning of the law, without doing violence to its expressions. As a road cannot be opened without ascertaining its width, and as there are no persons to whom the power of doing this, is expressly given, I have no doubt but it was intended, the court should do it, otherwise the road could not be opened at all. I think, therefore, that by the expressions of the act, it may be fairly understood, that the court who order the road to be opened, are at the same time, to order the width of it. As to the objection of inconvenience, from the possibility of the courts of different counties ordering it to be •opened of different widths, there is not much in it. For even supposing it so to happen, and that inconvenience should be found to arise from it, the legislature has always power to reduce the road to an uniform width. I am, therefore, of opinion, that the proceedings concerning this road should be confirmed.
Ye ates J. concurred.
Brackenridge J. concurred.
Proceedings confirmed.